account-render or bill in equity ; until there has been a settlement of partnership accounts, *assumpsit* will not lie for advances, unless there has been an express promise to pay. This rule applies whether the property of the partnership has ceased to exist or not : Leidy *v.* Messinger, 21 P. F. Smith, 177.

The position taken by us is that the relation of debtor and creditor does not exist between partners until a settlement is made and balance struck. Before that is done, the liability of each partner is to account and not to pay : Ferguson's Admrs. *v.* Wright's Admrs., 11 P. F. Smith, 262 ; Singizer's Appeal, 4 Casey, 524 ; Brown's Appeal, 8 Norris, 142 ; Knerr *v.* Hoffman, 15 P. F. Smith, 126.

Although it is true that an administrator is not " a party aggrieved" by an order of distribution, he is, nevertheless, a trustee for the parties beneficially interested, and as such represents those who may be aggrieved : Koch's Estate, 4 Rawle, 268.

It has been held that they may appeal from the valuation for collateral inheritance tax on the personal estate of a decedent : Comm *v.* Coleman's Admrs., 2 P. F. Smith, 468.

The cases cited by the appellants have no bearing on the question presented in this record. We have not appealed. We do not dispute the distribution ordered by the Court below. As administrators, we appeared in that Court and excepted to certain findings. When we did this, there was no objection made to our right to do so. The Court then corrected the errors complained of, and it is only the correctness of the decree, and not the mode in which it was reached, that is now the subject of review.

MARCH 20TH, 1882.—PER CURIAM : We affirm this decree upon the opinion of the learned judge in the Court below.

Decree affirmed, and appeal dismissed at the costs of the appellant.

JANUARY TERM, 1881, No. 149.          MARCH 6TH, 1882.

## Appeal of Paul Faust.

1. Where a dining-room and kitchen were erected as an addition to a house, and a door and window opened from the old structure into the new, a mechanics' lien, filed under the Act of May 1st, 1861, P. L., 550, need not be confined to the new structure.

2. The fact that the words " L or wing" are used in the lien instead of the word "addition," contained in the act of Assembly, does not invalidate the lien.

3. A lien filed under this act, for materials furnished "for and about the erection, construction, alterations, and repairs of the said building," may be valid, though the evidence shows that they were mainly used in building an "addition" to the house.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUN-KEY, STERRETT, and GREEN, JJ.

Appeal of Paul Faust from the decree of the Court of Common Pleas of *Lehigh County*, confirming the report of an auditor appointed to make distribution of the fund in court arising from a sheriff's sale of real estate.

The fund in court, amounting to $492.87, arose from the sale of the real estate of Joseph Hunter, and James B. Deshler was appointed commissioner to make distribution. From his report and the testimony taken before him the following facts appeared:

January 11th, 1877, Ferdinand W. Wint, Owen W. Fatzinger, and James P. Wint, trading as F. W. Wint & Co., filed a mechanics' lien, No. 3475, for $222.11; and February 2d, 1877, Charles Corwin and Henry B. Corwin, trading as Charles Corwin & Bro., filed a lien, No. 3481, for $69.77, against Joseph Hunter, owner and contractor. These liens were identical in form, and were entered " against all that certain two-story brick dwelling house, with one-half a story for garret, more fully described, as follows: The main building, 20 feet front on Second Street, and in depth 30 feet 6 inches, and an addition, used as a dining-room and kitchen, also two stories high, 20 feet wide and 35 feet 2 inches deep; also, this building, however, consists of the one-half a block of two dwelling-houses; the adjoining house in said block is owned by Charles W. Chapman. This lien being filed in accordance with the acts of Assembly in such case made and provided, but more particularly in accordance with act of Assembly, approved April 4th, 1870, relating to Lehigh County, granting the right of filing liens for alterations and repairs, the said materials furnished being more particularly to the building, alterations and repairs of the 'L' or wing, more fully and particularly described as follows: It adjoins the main building, and has a depth of 35 feet 2 inches, and a width of 20 feet, and is two stories high, with tin roof. On the southeasterly side, nearest the main building, is a porch, two stories high, inclosed in front, which is 17 feet 7 inches in length, about 6 feet in width; and on lower side, nearest the back end, is a bay-window, two stories high, and about $11\frac{4}{12} \times 4\frac{6}{12}$ feet. The other side of this wing is bounded by wing of Charles W. Chapman's house. On the rear end of said wing, next to said Chapman's line, is a water-closet,

$4\frac{1}{2} \times 4\frac{1}{2}$ feet, and two stories high. The whole building, including the wing, is 20 feet front by 65 feet 8 inches in depth, situate on a lot or piece of ground in said borough of Catasauqua (describing it), and the lot or piece of ground and curtilage appurtenant to said building. The said sum of . . . being a debt contracted for materials and work done and furnished by the said . . . within six months, for and about the erection, construction, alterations, and repairs of the said building, of which the said Joseph Hunter was or is the owner or reputed owner, architect, contractor, and builder thereof; . . . and the said . . . claim to have a lien for the aforesaid sum . . . on the said building and lot or piece of ground and curtilage appurtenant thereto, from the commencement of said alterations and repairs, according to the acts of Assembly in such case made and provided."

Wint & Co. also filed a mechanics' lien, No. 3474, January 11th, 1877, for $49.09, against Hunter, owner or reputed owner, "against all that certain ice-house, with slate roof, situate on an alley, between Second and Third streets, and Bridge and Pine streets, in the borough of Catasauqua, in the county of Lehigh; said building having a front of 18 feet and 11 feet in width, and one story high, covered with slate roof, and is situate on a lot or piece of ground in the said borough of Catasauqua, bounded and described as follows (describing the same lot). The said sum of $49.09 being a debt contracted for materials furnished by the said F. W. Wint & Co., within six months last past, for and about the erection and construction of the said ice-house, of which Joseph Hunter was or is the owner or reputed owner, and the architect, constructor, and builder thereof, at whose instance and request the said materials and work were done, furnished, and delivered, as aforesaid; and the said F. W. Wint & Co. claim to have a lien for the aforesaid sum of $49.09 on the said building and lot of ground and curtilage appurtenant thereto, from the commencement of said construction, according to the acts of Assembly made and provided."

No alterations or repairs were made to the old or main building except such as were incidental to the addition or L building, consisting of a door and window from the old into the new.

December 15th, 1876, Paul Faust entered up a judgment against Hunter for $4000.

*F. W. Wint* testified, *inter alia:*

"The main part of the lumber furnished by us was used for building this addition. I can't say what repair was made at the old house. The old building was left standing,

and this addition was put to it, and no repairs were made to the old building except such as were necessary by reason of putting this addition."

*Charles Corwin* testified, *inter alia:*

" These goods were not for the main house, but for the wing or addition, described in the lien."

Counsel for Faust objected to the liens, Nos. 3475 and 3481, because they did not specify the amount of material furnished for repairs, nor the amount for alteration, as the act requires, and because the testimony shows that the greater part of the lumber and material was furnished for the erection and construction of an addition.

The auditor reported, *inter alia:*

" The Act of May 1st, 1861, allowed mechanics' liens to be filed for alterations, repair, or addition to any house, etc. This act was extended to Lehigh County by Act of April 4th, 1870.

" The Supreme Court has said in McClintock *et al. v.* Rush, 13 P. F. Smith, 203, that it is not necessary that the description in a mechanics' lien should be either full or precise. Certainty to a common intent is the rule, as a lien in a case of this kind attaches to the whole building, and so much of the ground of the owner adjoining as is necessary for the use and enjoyment of the building for the purpose for which it was designed. The liens in question fully describe the L or wing, which is the addition or new building. There can be no difficulty in determining what building is meant. The fact that the word L or wing is used instead of the word contained in the act (addition) does not invalidate the lien. Your commissioner, in allowing the lien, does so with the knowledge that the Supreme Court has held, in Wharton *v.* Douglas, that where work is done on or about the erection of an addition to an old building, the lien, to be valid, must be filed expressly against the new building, and describe it. We think this has been done in this case. True, the whole building is also described. That cannot matter; in fact, it is necessary to describe the old building in order to give a proper description of the new portion. And that is done in the lien under discussion. It describes the old building, to which the new is joined, but says the lien is more particularly against the L or wing. In the case of Harman *v.* Cummings and Wife, 7 Wright, 322, Lowrie, J., says: 'In strict propriety, the claim ought not to have averred that the work was done in the erection of the whole house, but only the new part. But we do not now see that this is material, for only the work pertaining to the new wing, and that which connects it with the old building can

be allowed a lien, though the lien when established will extend to the whole.'

"The lien, No. 3474, against the ice-house, is objected to because not valid, and because it is filed against the ice-house, which was a part and one of the buildings on a lot of ground owned by J. Hunter; that the lien does not contain in its description any space of ground appurtenant thereto; that the ground it is built upon was part of the curtilage of the main building or erection on said lot, as appears by inspection of the lien. It is described as fronting upon an alley 18 feet front and 11 feet wide, with a lot of ground fully described in the lien, said building being one story high, slate roof. The objections to the liens are not sustained, and the three liens are allowed and paid in full, as per annexed statement, and the balance to the Faust judgment."

Faust filed six exceptions to this distribution, which the Court below, ALBRIGHT, P. J., dismissed, confirming the report in the following opinion:

"The distribution made by the auditor is confirmed upon his opinion. The conclusion arrived at is not contrary to the decision in Wharton v. Douglas, 37 Leg. Intel., 494, which has been referred to. There the lien was against a large rolling-mill and a boiler-house, for materials furnished 'in and about the construction of said building.' The evidence showed that the materials were for the erection of the boiler-house only. It was about 30 feet from the mill proper, upon a lot of ground purchased many years after the mill had been erected and in operation, and was connected with the latter only by steam-pipes running overhead. (Before the erection of the boiler-house the boilers had been in the mill proper, under the same roof, with the engines and machinery.) Here, however, there was attached a dining-room and kitchen at the rear end of and against a dwelling-house, built upon a 40-feet-wide town lot, bounded on both sides by lots owned by other parties. The new and old structures were connected by doors, and together constitute one house. To say that in a case like this the claim must be confined to the new portion, is in effect denying any practical benefits under the Act of 1861, so far as additions are concerned, and in many cases would be almost equivalent to a destruction of the property to which the addition has been built. The right to a lien implies the right to enforce it by a sheriff's sale of the building and curtilage. If a party having a claim for the construction of a bay-window, a library or dining-room, or a kitchen, erected against and

[Appeal of Paul Faust.]

necessarily connected with a dwelling-house, could sell that off at sheriff's sale, it would be sure to bring not a tithe of what it cost. No one would buy it for any purpose except to annoy or drive to terms the owner or lien creditor of the depreciated old building."

Faust then appealed, assigning that the Court erred in dismissing the exceptions.

*John Rupp*, *R. C. Hamersley*, and *Thomas B. Metzger*, for the appellant.

The Act of May 1st, 1861, extended to Lehigh County, does not permit a mechanic to file claims for repairs, alterations, and additions all in one lien. His lien must set forth the distinctive subject-matter. The requirements of the act must be strictly complied with. He cannot file a claim for one purpose when the proof is that the materials were furnished for another kind of work. Here the materials were not for "repairs or alterations," but for the erection and construction of an addition: Pittsburgh's Appeal, 20 P. F. Smith, 146; Rynd *v.* Bakewell, 6 Norris, 460; Wetmore's Appeal, 27 Pitts. L. J., 49.

There was no evidence submitted on the part of the claimants in the lien against the ice-house to show what the proportionate value of this ice-house was compared with the value of the main building, nor did the claimants make any attempt before or after the sheriff's sale, under the Act of June 16th, 1836, to have a curtilage set out by metes and bounds necessary to the use and enjoyment of the ice-house. The ice-house being built on the same lot or curtilage on which the main building is erected, the claimants must, by competent testimony, show its proportionate value to the whole. There was no attempt of this kind made by them.

*Winslow Wood* and *John D. Stiles & Son*, for the appellees.

The defence is purely technical. There is nothing in the acts themselves forbidding liens of this character, and there are no decisions laying down the rule stated by appellant: Harman *v.* Cummings, 7 Wright, 322; Nelson *v.* Campbell, 4 Casey, 156; Lightfoot *v.* Krug, 11 Casey, 348; Pretz's Appeal, 11 Casey, 349.

To require separate liens for an addition, for alterations and for repairs, would lead to multiplicity of suits, and is practically impossible.

The fact that the word "L" is used instead of the word "addition" does not invalidate the lien: McClintock *v.* Rush, 13 P. F. Smith, 203.

MARCH 20TH, 1882.—PER CURIAM: We affirm this decree upon the opinion of the learned judge of the Court below.

Decree affirmed and appeal dismissed at the costs of the appellant.

JULY TERM, 1882, No. 84.                    MARCH 8TH, 1882.

## Henninger *versus* Woodring.

1. Upon a *certiorari* to the judgment of an alderman, the transcript showed a cause of action within the jurisdiction, process regularly issued and served, the appearance of the parties, the examination of witnesses, the entry of judgment on the same. day, that no appeal was taken, and that the *certiorari* was issued eight months afterward. It also contained the following unsigned entry, " February 10, 1880, I acknowledge to have received full satisfaction."

It appeared from depositions that after the testimony was taken, and before the decision, counsel for defendant proposed to the counsel for plaintiff, in the presence of the plaintiff, to compromise the suit by the surrender of the note in dispute within ten days or a fortnight, which offer was accepted. Notice of the judgment was given to the defendant the day of its entry. The counsel for defendant subsequently surrendered the note to the counsel for plaintiff and paid him the costs and fees, and the latter promised to satisfy the judgment. The unsigned entry on the docket was made at his instance.

*Held*, that there was no ground upon which to base a charge of improper conduct or fraud against the alderman, and that the judgment was properly affirmed.

2. *Quœre* as to whether a writ of error lay in such a case, and whether the parol testimony was properly before the court for consideration.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lehigh County.*

Certiorari, issued September 8th, 1880, to the judgment of an alderman, W. L. Jones, in an action of trover and conversion brought by H. J. Woodring against Josiah Henninger.

The transcript of the alderman was as follows:

"Trover and conversion. Capias issued January 10th, 1880. Daniel Weaver, constable.

January 12th, defendant brought up. Plaintiff also appears and claims $300 damages in trover and conversion, for the retaining by defendant of a certain promissory note, drawn to the order of Moses Heberle, by Dr. Samuel Guth, of the sum and value of $300, which said note is the property of and belongs to the plaintiff; which said promissory note the defendant has converted to his own use, and which the defendant refuseth to return to the plaintiff, although requested. Plaintiff sworn. W. P. Snyder sworn on behalf